UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANDREW J. CHERRONE, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 2:14-cv-0046-WTL-WGH |
| | ) |
| SUPERINTENDENT OF WABASH VALLEY CORRECTIONAL FACILITY, | ) |
| | ) |
| Respondent. | ) |

**Entry Discussing Petition for Writ of Habeas Corpus**

The petition of Andrew J. Cherrone, Jr. for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. WVE 13-10-0011. For the reasons explained in this Entry, Cherrone's habeas petition is **denied** and this action is **dismissed**. The petitioner's motion requesting a status update [dkt. 25] is **granted** consistent with this Entry.

**Discussion**

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v.*

*McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000). In habeas corpus cases, however, even if a due process error has been committed, the burden is on the petitioner to show that the error had a substantial and injurious effect on the outcome of the proceeding. *O'Neal v. McAninch,* 513 U.S. 432 (1995).

### B. The Disciplinary Proceeding

Cherrone was charged with threatening in violation of prison rules. On October 14, 2013, Correctional Officer Neff wrote a conduct report that charged Cherrone with class B offense 236, disorderly conduct. The conduct report stated:

> On 10-14-13 at 16:38 p.m. I C/O Neff witnessed offender #994200 Cherrone, Andrew kicking his cell door. He was arguing about fruit missing off his tray. I explained to him it was a misunderstanding, why he didn't get it. I then went to the Retherm (sic) and got his fruit. And delivered it to him. He then proceeded to call me a liar and that tomorrow I would be wearing his meal. Then proceeded to kick his door more.

During the screening stage the charge was changed to threatening, a Class B offense 213.

On October 18, 2013, Cherrone was notified of the charge when he was served with the conduct and screening reports. Cherrone was notified of his rights, pled not guilty and declined the appointment of a lay advocate. Cherrone requested witness statements from Officer Neff and Sgt. Drada. Cherrone explained to the Screening Officer that he believed Officer Neff would state that "[h]e misunderstood me. I said he wouldn't be working tomorrow. I did not threaten him." Cherrone also wanted a statement from Sergeant Drada who he believed would state the same information as Neff, therefore the Screening Officer wrote "same statement as above."

In his witness statement Officer Neff wrote:

> "I C/O Neff stand by my conduct report of Cherrone, Andrew # 994200 threatening that I would wear his food tray the next day. He made this statement to

me after Sgt. Drada exited the wing. Offender made the statement to me as I was exiting the 600 range."

Sergeant Drada stated "I did not hear Cherrone, Andrew 994200 threatening C/O J. Neff this date."

On October 22, 2013, the Hearing Officer conducted the prison disciplinary hearing and found Cherrone guilty of Class B offense 213, threatening. The sanctions recommended and approved were an earned credit time loss of 45 days, 3 months in disciplinary segregation, a 30 day loss of telephone privileges and a written reprimand. The hearing officer imposed these sanctions because of the seriousness of the offense and the likelihood these sanctions would have a corrective effect on Cherrone's future behavior. Cherrone appealed unsuccessfully and the present action ensued.

**C. Analysis**

Cherrone argues that he was denied the right to exculpatory evidence; there was insufficient evidence to find him guilty; he was denied an impartial decision maker and denied the right to a written copy of the hearing officer's findings.

**1. Video Evidence**

One of the basic requirements of due process in a prison disciplinary proceeding is the opportunity for the inmate to call witnesses and present documentary evidence in his defense. "Prison administrators must disclose material, exculpatory evidence—including surveillance videos—to ensure that the accused inmate can present his best defense and that the decision-maker considers all relevant evidence." *Upshaw v. Brown*, 501 F. App'x 557, 559 (7th Cir. 2013); *Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *Piggie,* 344 F.3d at 678.

Cherrone asserts "[a]t screening" he "verbally requested video of both the SHU 600 Range and of his cell SHU-B-602." Petition p. 3. Cherrone states that when he requested the video as evidence "[t]he Screening Officer told Cherrone he 'would not get the video because Sgt. Drada's statement will be enough.'" Petition p. 4. The respondent argues that there is no record of Cherrone requesting the video and that any video no longer exists.

Cherrone argues that the video of his cell is exculpatory because it would show that he was never kicking the door as charged in the conduct report. But, whether he was kicking his solid steel cell door is not material to the charge of threatening and Cherrone does not dispute that he was making a lot of noise in an attempt to attract the attention of Sgt. Drada. See dkt. 13-5 at p. 2.

Cherrone also states that the camera on the range would show both Officer Neff and Sgt. Drada leaving the range together. But even if Officer Neff and Sgt. Drada were near each other the entire time they were on the range this fact is not exculpatory. It is not unusual for one person to hear and understand something said through a solid steel door that another does not. This is particularly true when more than one person is yelling as Cherrone reported. Dkt. 13-5 at 2. Further, Sgt. Drada did not say in his statement that Cherrone did not threaten Officer Neff, only that he did not hear any threat.

The video is not available, but even if it were, there is no basis to conclude (even if the video shows what Cherrone suggests) that the video was exculpatory or that it would have changed the outcome of the disciplinary proceeding. Accordingly, no relief is warranted on this basis.

### 2. Sufficiency of the Evidence

In addition to procedural safeguards, the disciplinary decision must be supported by at least "some evidence." *Hill*, 472 U.S. at 445; *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). This standard "does not require evidence that logically precludes any conclusion but the one reached

by the disciplinary board." *Hill*, 472 U.S. at 457. The determination should be upheld if "there is any evidence in the record that could support the conclusion reached." *Id*. A conduct report alone may provide "some evidence" of guilt, notwithstanding its brevity or the presence of conflicting evidence. *McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir. 1999). Indeed, we need only consider the petitioner's exculpatory evidence to the extent that it undermines the reliability of the evidence relied upon by the hearing officer. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).

Cherrone tries to attack Officer Neff's credibility by suggesting that the Report of Conduct and Officer Neff's witness statements are contradictory. They are not. They provide different details but they are consistent in all material respects. Officer Neff does not state in the Report of Conduct that he was threatened while handing Cherrone his fruit, but that the threatening remark was made after Cherrone was provided the fruit.

In this case the hearing officer considered the conduct report, the offender's statement, & witness statements and found Cherrone guilty. The hearing officer reviewed all of the evidence in this case and found the officers' statements more credible than Cherrone's.

### 3. Impartial Decision Maker

Next Cherrone argues that he was denied an impartial hearing officer because he was denied video evidence and that with "two (2) contridictory (sic) statements as to what was 'heard'" he was still improperly found guilty. Petition p. 6. Cherrone asserts that "the D.H.O. adhered [to] the 'guilty until proven innocent' standard that when officers write reports, they are never wrong." Petition p. 6.

It is true that due process requires an impartial decision-maker. *See Wolff,* 418 U.S. at 570–71. However, due process requires recusal only where the decision-maker has a direct or otherwise substantial involvement in the circumstances underlying the charges against the offender. *Redding*

5

*v. Fairman*, 717 F.2d 1105, 1113 (7th Cir.1983). Because there is no admissible evidence that hearing officer was involved in the acts at issue or in the investigation, there is no evidence that he was an impartial decision-maker. The fact that the hearing officer did not believe Cherrone's version of events does not mean that the hearing officer was biased. No relief is warranted on this basis.

### 4. Copy of Hearing Report

Finally, Cherrone asserts that he never received a copy of the hearing report. In response, the respondent argues that this claim is not supported by any evidence and that even if it was true, Cherrone could have requested a copy of the hearing report from his offender packet.

To ensure an offender's due process rights have not been violated, a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action must be provided. *Hill*, 472 U.S. at 445. In this case, the hearing officer filled out a hearing report which documents all of the evidence reviewed in order to make a determination of whether Cherrone was guilty or not guilty.

Due process does not require that a hearing report be provided within a specific number of days. In addition, Cherrone was provided (at the latest) with a copy of the hearing report in the course of briefing this action. Dkt. 13-5 (hearing report). *Wolff* does require that hearing reports be provided promptly enough that inmates are not at a "disadvantage in propounding [their] own cause." *Arce v. Indiana Parole Bd.*, 596 F. App'x 501, 504 (7th Cir. 2015) (citing *Wolff,* 418 U.S. at 565). Here Cherrone has not demonstrated that he suffered any disadvantage because of any delayed receipt of his hearing report. There is no indication that he was not able to exhaust fully his administrative remedies and present his case. Without a showing that he was harmed by the

delay, he cannot, on this record, show that any violation of *Wolff's* mandate was anything other than harmless error. *See Jones,* 637 F.3d at 846.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Cherrone to the relief he seeks. Accordingly, Cherrone's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/23/15

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

ANDREW J. CHERRONE, JR.
DOC # 994200
Wabash Valley Correctional Facility
Electronic Service Participant -- Court Only

All Electronically Registered Counsel